IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL J. PENDLETON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) 3:25-cv-00099 |
| PENNSYLVANIA BOARD OF | ) |
| PROBATION AND PAROLE, | ) |
| PENNSYLVANIA ATTORNEY | ) |
| GENERAL'S OFFICE, and Warden of SCI- | ) |
| Somerset, | ) |
| | ) |
| Respondents. | ) |

**OPINION**

**Mark R. Hornak, United States District Judge**

Petitioner Michael J. Pendleton, a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC") currently housed at the State Correctional Institution at Somerset, petitions this Court *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner seeks relief on the basis that his substantive due process rights have been violated by the Pennsylvania Parole Board ("the Board") in its denial of parole. For the reasons set forth below, the petition will be denied and no certificate of appealability will issue.

**I.    BACKGROUND**

Petitioner is serving a sentence of imprisonment of 28 years to life imposed following his conviction in the Court of Common Pleas of Allegheny County, Pennsylvania, for, *inter alia*, murder of the second degree and robbery.[1] These crimes occurred in 1997 when Petitioner was 14

---

[1] Petitioner was originally sentenced to a mandatory term of life imprisonment without the possibility of parole for the murder conviction but was resentenced in 2018 following the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012).

years old. Petitioner became eligible for parole in June of 2025.

Petitioner initiated the present matter by filing a petition dated March 11, 2025, in the United States District Court for the Middle District of Pennsylvania. (ECF No. 1). Therein, he challenged the February 25, 2025, decision of the Board to deny him parole. The Middle District transferred the matter here. (ECF No. 7).

On July 14, 2025, Magistrate Judge Keith A. Pesto issued a Report and Recommendation on the petition. (ECF No. 11.) No objections were filed thereto; however, before a final order was issued, Petitioner filed a motion to amend and/or supplement the petition due to a new denial of parole issued on August 7, 2025. (ECF No. 13). This Court granted the motion to amend and vacated the pending Report and Recommendation without prejudice as moot. (ECF No. 14). Petitioner filed an amended petition on November 18, 2025. (ECF No. 16). Respondents filed an answer on December 15, 2025. (ECF No. 21). Petitioner filed a reply on January 15, 2026. (ECF No. 24). The amended petition is ripe for review.

## II.   LEGAL STANDARD

28 U.S.C. § 2254, the federal habeas statute applicable to prisoners in custody pursuant to a state court judgment, permits a federal court to grant a state prisoner a writ of habeas corpus "on the ground that he or she is in custody in violation of the Constitution…of the United States." 28 U.S.C. § 2254(a). It is Petitioner's burden to prove that he is entitled to the writ, and to meet that burden he must establish that the Board has violated a federal constitutional right. *Id*.; *see, e.g.*, *Vickers v. Sup't Graterford SCI*, 858 F.3d 841, 848-49 (3d Cir. 2017).

## III.   DISCUSSION

In its August 7, 2025, denial of parole, the Board provided the following list of reasons that contributed to its decision: Petitioner's failure to demonstrate a motivation for success, his lack of

remorse for the offenses committed, the negative recommendation of the trial judge, the negative recommendation of the prosecuting attorney, and the nature of Petitioner's case. (ECF No. 18-1 at 1). The Board further indicated that at its next interview with Petitioner, it would consider whether he had maintained a favorable recommendation for parole from the DOC and whether he had maintained a clear conduct record. (*Id.* at 1-2). Petitioner argues that the Board violated his due process rights where it enhanced his punishment based on factors already considered by the sentencing court and where it arbitrarily considered impermissible factors.

Respondents first argue that Petitioner failed to exhaust his claim in state court. Indeed, a federal habeas petitioner typically must complete the exhaustion of his available state court remedies before a district court may determine the merits of his habeas claims. Congress codified this requirement at 28 U.S.C. § 2254(b) and (c) for state prisoners, such as Petitioner, who are in custody pursuant to a state court judgment. Those provisions provide:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that –
>
>     (A)    the applicant has exhausted the remedies available in the courts of the State; or
>
>     (B)    (i) there is an absence of available State corrective process; or
>
>                (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
>                - - -
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

The exhaustion requirement is "grounded in principles of comity; in a federal system, the States should have the first opportunity to address and correct alleged violations of state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). It "is designed to give the state

courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts[.]" *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Importantly, a petitioner must have "invoke[d] one complete round of the State's established appellate review process[,]" to satisfy the exhaustion requirement. *Id.*

Respondents contend that Petitioner has an available state court remedy for his substantive due process claim in the Commonwealth Court of Pennsylvania. Of note, Petitioner is currently pursuing review of his parole denial in Commonwealth Court at docket number 328 MD 2025. The publicly available docket reveals that he filed a petition for review on August 20, 2025. The petition is pending.

Petitioner counters that he is excused from the exhaustion requirement under *DeFoy v. McCullough*, 393 F.3d 439 (3d Cir. 2005). In *DeFoy*, the Court of Appeals held that, aside from litigating an *ex post facto* claim, Pennsylvania law did not provide a mechanism by which a prisoner could challenge a parole denial. *Id.* at 445. Thus, it held that a Pennsylvania prisoner challenging the denial of parole is exempt from the exhaustion requirement with respect to all other types of constitutional claims. *Id.*

While the law in Pennsylvania arguably has been clarified to provide for an avenue for exhaustion in the time since *DeFoy* was decided, *see Toland v. Pennsylvania Bd. of Probation and Parole*, 263 A.3d 1220 (Pa. Commw. Ct. 2021) (holding a prisoner could litigate substantive due process challenges to the Board's denial of parole in a mandamus action pursuant to the original jurisdiction of the Commonwealth Court), and while the continuing validity of *DeFoy* has been called into question by district courts, *see, e.g., Hinton v. Armel*, Civ. A. No. 22-1494, 2025 WL 295773 (W.D. Pa. Jan. 24, 2025) (holding that *DeFoy* does not apply because the law in Pennsylvania changed in the intervening two decades) (citing *Toland*); *Bowman v. Brittan*, Civ.

A. No. 23-2092, 2024 WL 5050028, at *1 n.2 (E.D. Pa. Oct. 21, 2024) ("Based upon *Toland*, which *DeFoy* could not consider since it had yet been decided, it is clear that Petitioner had an available state court remedy; hence, he was required to comply with the exhaustion requirement"), neither the Court of Appeals nor the United States Supreme Court has overruled *DeFoy*. As this Court has noted before, except in the rarest of circumstances, this Court is bound to abide by the precedential decisions of our Court of Appeals unless they have been overruled by that Court, or by the Supreme Court. *United States v. Green*, 610 F. Supp. 711, 715 (W.D. Pa. 2022). Neither court has stated such to be the case with *DeFoy*.

In any event, the Court need not analyze whether *DeFoy* has been so undercut by subsequent cases from one of those courts because the Petitioner's claim has no merit, and the Court will deny it on that basis. *See Roman v. DiGuglielmo*, 675 F.3d 204, 209 (3d Cir. 2012) (holding that a federal court "may bypass the exhaustion issue altogether should [it] decide that the petitioner's habeas claim fails on the merits"); *see also* 28 U.S.C § 2254(b)(2).

Petitioner has no right to parole under state law. *See, e.g.*, *Hudson v. Pennsylvania Bd. of Prob. and Parole*, 204 A.3d 392, 395 (Pa. 2019). Whether to grant him parole is a decision left to the sole discretion of the Board. 61 Pa. Cons. Stat. §§ 6135, 6137; *see, e.g.*, *Homa v. Pennsylvania Bd. of Prob. and Parole*, 192 A.3d 329, 334 (Pa. Commw. Ct. 2018). Nevertheless, the Fourteenth Amendment to the United States Constitution provides that the State may not "deprive any person of life, liberty, or property without due process of law," and the Court of Appeals for the Third Circuit has held that "once a state institutes a parole system all prisoners have a liberty interest flowing directly from the due process clause in not being denied parole for arbitrary or constitutionally impermissible reasons." *Block v. Potter*, 631 F.2d 233, 236 (3d Cir. 1980). *See also Newman v. Beard*, 617 F.3d 775, 782 (3d Cir. 2010). The Supreme Court also has held that

"although a person may have no 'right' to a valuable government benefit, and may be denied it for any number of reasons, 'there are some reasons upon which the government may not rely.'" *Burkett v. Love*, 89 F.3d 135, 139 (3d Cir. 1996) (citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). Under substantive due process, as the term has been construed by the courts, a state may not deny parole on constitutionally impermissible grounds. *Id.* at 140. In addition, a state may not base a parole decision on factors bearing no rational relationship to the interests of the Commonwealth. *Block*, 631 F.2d at 237. But the Third Circuit has stressed that a substantive due process claim based upon alleged arbitrary and capricious action in parole decisions is not easily mounted. *Hunterson v. DiSabato*, 308 F.3d 236, 246-47 (3d Cir. 2002). That is because the relevant level of arbitrariness required to find a substantive due process violation involves not merely action that is unreasonable, but rather, something more egregious, which the Third Circuit has termed at times "conscience shocking." *Id.* The appeals court has made clear that "only the most egregious conduct will be considered arbitrary in the constitutional sense." *Id.* at 247-48. *See also Newman*, 617 F.3d at 782 ("Conduct can violate substantive due process if it shocks the conscience, which encompasses only the most egregious official conduct.") (internal quotations and citations omitted). It also has stated: "[F]ederal courts are not authorized to second-guess parole boards and the requirements of substantive due process are met if there is some basis for the challenged decision." *Coady v. Vaughn*, 251 F.3d 480, 487 (3d Cir. 2001) (emphasis added); *Newman*, 617 F.3d at 782 ("The conduct must be intended to injure in some way unjustifiable by any government interest[.]") (internal quotations and citations omitted).

     Petitioner has not met his burden of showing that the Board's decision denying him parole was arbitrary and capricious. He asserts that the Board improperly considered of the nature and circumstances of the crime, his lack of remorse for the crime, and the negative recommendation

of the trial judge, because these are considerations already made by the sentencing court. (ECF No. 18 ¶¶ 9-10, 12-14). He further objects to the Board's assessment of his failure to demonstrate motivation for success as both irrelevant and inaccurate. (*Id.* ¶ 8.) However, none the factors considered by the Board, including its statutorily mandated consideration of the nature of the offense committed and any recommendations made by the trial judge, 61 Pa.C.S. § 6135(a)(1) and (a)(2), can be described as "conscience shocking."

Petitioner also makes a bald assertion of denial of equal protection, alleging that he is one of ten former "juvenile lifers" who were 14 years old at the time of their crimes still incarcerated for a crime that was "beyond his control." (ECF No. 18 ¶ 11).[2] To the extent that Petitioner is raising a separate claim in this assertion, he has failed to show his is entitled to relief thereupon. The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "This is not a command that all persons be treated alike but, rather, 'a direction that all persons similarly situated should be treated alike.'" *Artway v. Att'y Gen. of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)); *see also United States v. Armstrong*, 517 U.S. 456, 456-57 (1996) (Equal Protection Clause prohibits a decision to prosecute based on an unjustifiable standard such as race, religion, or other arbitrary classification). Petitioner's bald assertion that he was denied parole where other former "juvenile lifers" were granted parole falls well short of establishing a plausible claim for an equal protection violation where he has not even advanced a showing that those unnamed "lifers" did not vary from him in other critical respects as to their crimes, their circumstances, their terms served and the lawful factors considered by the parole officials in regard to their cases.

---

[2] He also cites the grant of parole to his co-defendant.

Finally, he asserts that the Board "abused its discretion by disregarding the true facts." (*Id.* ¶ 16). This argument is little more than an invitation for the Court to second-guess the Board in its analysis. As set forth above, "federal courts, on habeas review, are not to 'second-guess parole boards,' and 'the requirements of substantive due process are met if there is some basis for the challenged decision." *Hunterson v. DiSabato*, 308 F.3d 236, 246 (3d Cir. 2002) (quoting *Coady*, 251 F.3d at 487). Because the Board advanced multiple appropriate bases for its denial, its decision does not offend substantive due process.

For these reasons, Petitioner is not entitled to habeas relief. His petition will be denied.

## IV. CERTIFICATE OF APPEALABILITY

AEDPA codified standards governing the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from…the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court[.]" 28 U.S.C. § 2253(c)(1)(A). It also provides that "[a] certificate of appealability may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* § 2253(c)(2).

When the district court has rejected a constitutional claim on its merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Petitioner has not made a substantial showing of the denial of a constitutional right and reasonable jurists would not disagree with the conclusion that Petitioner's substantive due process claim fails on the merits. Accordingly, no certificate of appealability will issue.

An appropriate Order follows.

Dated:   January 26, 2026

                                              s/ Mark R. Hornak
                                              Mark R. Hornak
                                              United States District Judge